CRABBE, Ancillary Admr., Plaintiff-Appellee. v. LINGO, et al.,
Defendants-Appellees other than Bert E. White,
WHITE, Defendant-Appellant.

Ohio Appeals, Second District, Madison County.

No. 154.   Decided June 1, 1945.

98

H. H. Crabbe, London, Ancillary Administrator, for plaintiff-appellee.

Tanner & Tanner, London, for appellant, Bert E. White.

Frank J. Murray, London, for George E. Lingo.

## OPINION

By MILLER, J.

This is an appeal on law and fact from a judgment of the Probate Court of Madison County, Ohio, ordering the sale of decedent's real estate situated in said county.

The facts presented in evidence in the Probate Court are set forth in the agreed statement which by stipulation has been made part of the record. The only exception is that the relief granted on the admitted facts is contrary to law.

Briefly stated, the facts are as follows: Mrs. Lucy L. Lingo died testate in December, 1943, in the County of Los Angeles, California, and her will was probated in the Superior Court of that county. Being seized of property in Ohio, an authenticated copy of her will was filed in the Probate Court of Madison County, the will being set forth in the agreed statement of facts. George E. Lingo, surviving spouse, was appointed domiciliary executor of her estate and H. H. Crabbe, the ancillary administrator, both of whom are acting in their respective capacities.

Decedent in her will, among other things devised real estate in Glendale, California, and the sum of $500.00 to Marie M. Taylor, a niece by marriage, and to her husband, George E. Lingo, a life estate in the remainder with power of sale and recourse to principal for his care. Upon the death of the husband the remaining estate was to be sold and the net proceeds thereon paid to several persons, among them being the appellant, Bert E. White, who was devised the sum of $400.00 and "a sum equal to one-half of the net sale price of my farm in Ohio". The certificate of assets and liabilities of decedent's

estate as filed by the ancillary administrator shows the appraised value of her Ohio estate to be $18,880.00 in real estate and no personal property. Her California property was appraised at $21,549.80 and composed of personal property of $3049.80 and of real estate in the value of $18,500.00. The liabilities scheduled by the ancillary administrator show the Ohio indebtedness to be the sum of $1334.82, and the California indebtedness, including a mortgage on same real estate in California and a bequest to Mary M. Taylor of $500.00 to be the sum of $10,036.49. The total liabilities amount to $11,371.31. The ancillary administrator filed a petition in the Probate Court of Madison County, Ohio, to sell 238.59 acres of land in Deercreek and Jefferson Townships, Madison County, Ohio, to pay the indebtedness of the decedent. The surviving spouse, George E. Lingo, in the Probate Court of Madison County, Ohio, elected not to take the provisions made for him in the will, but to take under the laws of descent and distribution. The appellant elected to take the real estate described in the petition at its appraised value upon the condition that he be given credit for one-half of the value of the sale price thereof.

In seeking a reversal the appellant argues:

(1) That Ohio real estate cannot be ordered sold in these proceedings because the debts of the estate are largely California debts and that Ohio real estate should only be sold to pay debts due to Ohio creditors.

(2) That the election of the surviving spouse to take under the law instead of under the will accelerates the legacy of the appellant but not the other legacies.

(3) That the real estate should have been ordered transferred to the appellant because he elected to take the whole farm and offered to pay therefor one-half of the appraised value in cash and give a receipt for his legacy in payment of the other one-half of the appraised value.

(4) That he should be found to be the owner of one-half of the real estate in Madison County.

Considering first the status of the estate with respect to the relationship of debts to personal estate, we find the personal estate to be $3049.80 and the debts to be $11,371.31. From this financial set up it was apparent to the executor in California that real estate had to be sold. Thereupon he caused an authenticated copy of the will to be recorded in Madison County, Ohio, procured the appointment of an ancillary administrator in that county, had all the California claims presented to such ancillary administrator, and when

the present proceedings were instituted, entered his appearance, filed an answer showing the personal property to be insufficient to pay the debts, and prayed the Court to order the sale of the Ohio property to pay the same. The purpose of the ancillary administration is to clear the title to property and, of course, to protect and pay Ohio creditors, and if necessary, to create a fund to pay the debts and legacies of the deceased.

**Sec. 10511-16 GC** provides:

"A domiciliary executor or administrator may file in the court by which the ancillary administrator was appointed information showing that it will be necessary to sell Ohio real estate of the decedent to pay debts and legacies, and the Court may thereupon authorize the ancillary administrator to sell such part or all of such real estate as may be necessary. The ancillary administrator shall proceed to sell such real estate in the manner prescribed by law."

It is therefore our conclusion that under the provisions of this section the Court was authorized to sell the land in Madison County.

The next question arises as to the effect upon the remainder-men of the election of George E. Lingo, the surviving spouse, not to take under the provisions made for him in the will, but to take under the laws of descent and distribution of Ohio. The effect of this election upon the estate is the same as though the life tenant had died the day he made the election. **Davidson v The Miners & Mechanics Savings & Trust Co., Exr., et al., 129 Oh St 418.** This, therefore, accelerated the legacy of all of the remaindermen. The appellant claims the effect would be the acceleration of his legacy only, but with this view we cannot agree. Item II of the will reads as follows:

"Upon the death of my husband I direct that all my remaining estate be sold and that the net proceeds therefrom be paid to the persons and in the proportions, as follows, to wit."

Then follows a list of fourteen names after each of which is placed in figures an amount of money varying from $150.00 to $1500.00. Among those thus included in the list is the name of the appellant which appears as follows:

"Bert E. White, nephew, $400.00 and a sum equal to one-half of the net sale price of my farm in Ohio."

This bequest to Bert E. White does not give him a one-half interest in the farm in Ohio, but it gives to him only $400.00 plus one-half of the net sale price of the farm. This bequest is one similar to that of the thirteen others named, only the amount of the bequest is not determined. Since all of the said legacies have been accelerated, how are they to be paid unless that is done which the Probate Court ordered done, namely, order the farm sold in order that the debts and legacies might be paid as far as possible. The legacies and debts in Ohio and California total the approximate sum of $25,000.00, and the personal property which could be applied on this amounted to only $3049.80, which shows the absolute necessity of selling the real estate in order that these debts and legacies might be satisfied. The appellant claims that the land in Ohio should be transferred to him because he has elected to take at the appraisement and offers to pay one-half in cash and to pay for the other half by giving a receipt for his legacy. It is true that the case of **Holt v Lamb, 17 Oh St 374,** holds that where land is ordered sold and the proceeds divided, the beneficiaries may elect to take the land, but it does not hold that any one of fourteen such beneficiaries has such right individually, especially where gross inequities would result therefrom. An examination of the assets and liabilities of this estate shows that the total assets amount to some $40,-000.00, and debts and legacies amount to approximately $25,-000.00. It will be seen that after the allowance to the husband of his interest in this estate under the laws of descent and distribution, there may not be a sufficient balance to pay these bequests in full. Should such be the case, then it would become necessary that each one of these fourteen beneficiaries receive their proportionate share. That the appellant be allowed to take his bequest in full and thereby to deny the other beneficiaries their full amount was not the intent of the will.

It is our conclusion that the ruling of the Probate Court in ordering the Ohio farm sold was correct and proper under the agreed statement of facts and the judgment will be the same in this court.

HORNBECK, P. J., and GEIGER, J., concurring.